Michael Paul for Ward-Evans. Thank you for allowing me to be here on this matter. Your Honor, this matter has been going on for over 30 years. And for 30 years, Mr. Evans has been incarcerated. This matter has been litigated for over 30 years. And we're still back to Stage 1. What's going to happen to Mr. Evans if he ever gets to his parole eligibility date? Nobody condones what Mr. Evans did. If we accept the jury's findings, nobody is going to condone it. But the sentence he received, as of today, of doing 30 years, isn't that similar to what we get in New Jersey, 30 years over life for a homicide, premeditated homicide? My client, although we don't condone what he did, has done 30 years for a non-homicidal effect, non-homicidal crime. He has been before the court on numerous occasions. He has submitted nine PCRs. He is relentless in wanting to be heard. I do not blame him. He is confused as to a couple of issues. What happens at the end of the day? What happens when Mr. Evans has reached his reasonable expectation of his credit, the amount of credit that he's achieved as an inmate? I think there's a case that came out about a year ago. I believe it's called Pepper, in which institutional credit is applied to an inmate if the inmate has the opportunity to come back before the court to be resentenced. This is no different than Pepper. I know you aren't just going to make a distinction relative to retroactivity, but in all fairness to my client, perhaps. I'm going to make a distinction because I think what's before us is an extremely legal and esoteric issue, if you will, as to not only the foreseeability or unforeseeable of the Delaware courts doing something, but also when they finally decided what they wanted to do, we would have to determine that what they did was basically unreasonable. So you have a couple of very legal, esoteric hoops to go through that impact on this very practical problem. I agree. It all comes down to one item, though. What do we do with Mr. Evans? But I agree with the court. There are certain issues or elements that have to be addressed before we get there, but it all comes down to one word, foreseeability. What was my client's foreseeability by being a model citizen? No, no, no. The foreseeability is what's the foreseeability of the Delaware courts holding as it did. In Evans 1? That, well, Evans 1, yes, that this 45 years in one statutory provision did or did not apply to the other statutory provision. And it wavered and went back and forth. And given the reading of the two provisions as separate, it would seem that the fact that they would come up with the reading that they were separate and not that the 45 years was not controlling on the other provision was at least foreseeable. Tell me how it is not. Well, Judge, it's almost an impossible question to answer. My client as a layman. As I said, it's esoteric. Yes, he represented himself in respect to this matter up until a point in time. And he did get assertive appealability to be heard before the court. I submitted the brief on behalf of Mr. Evans, and I'm here to argue it. He, in essence, is being penalized for making good law for other inmates. I mean, Evans 1, Evans 2. We could take what we want. If Evans 1 applied to Mr. Evans at the time, Mr. Evans arguably would have had an opportunity to get paroled. But instead, it went further. And as a result, my client did not reach his 45-year, quote, unquote, life sentence as a result at the time. Can I ask you a question? Sure. Now, you talked about foreseeability. I'm interested in what point of time should we be judging foreseeability? Would it be the time of his conviction? No, Judge. I think it's the time that Evans 1 was rendered. Why is that? Because on Evans 1, we didn't know what was going to happen with my client relative to a life sentence and what the interpretation and application of a life sentence was in Delaware. We do know it means perhaps, arguably, 45 years. I could state that in New Jersey and represent that it's 66 and some change. Sixty-six and one-third years, that is a life sentence in New Jersey. In Delaware, arguably, it's 45 years. If that's the case, my client, if he did get his foreseeable jail term credit or incarceration institutional credit, would now, as we speak, be eligible, arguably, for parole. But unfortunately, I can't make that argument. Mr. Paul, let me hone in on what Judge Shigaris has asked. How does it become a federal constitutional violation if, in fact, it was foreseeable at Evans 1 and becomes changed by virtue of Evans 2? Where is the constitutional violation? That's a very good question. I think it's a fundamental due process issue that my client, who had a reasonable expectation, as did the petitioner in Pepper, that if he was to do viable, good, meaningful things while institutionalized, he would ultimately benefit if given the opportunity. My client did nothing different. But you seem to be going down the road of making an argument that there is a federal constitutional right to good time. Or at least maybe he has a liberty interest in good time. Well, at least he has, I think, I agree with the court. However, given the facts of this case, the sentence per se, he has to have some type of knowledge, some type of actual number that he has an expectation where he's working from. And he can work from and work down by doing positive things, meaningful things as a inmate. Otherwise, there is absolutely no motivation for any inmate to do anything meaningful, whether it be talk to school kids, talk to high school kids, talk to anybody as a deterrent and say, don't wind up like me. Don't go out and do something when you're 18 years of age and spend the rest of your life in prison like I'm about to, I think. He doesn't know. He's unsure. He's unsure if life is life. He's unsure if life is 45 years. I don't know. I think the court has to make that decision. And if it is, in fact, 45 years, is that my client now eligible for parole? If the court grants him some good time, as they have in Pepper, my client now on a limited remand to the Delaware Supreme Court or Delaware Superior Court would be eligible for parole. Here's the problem with that argument, Lisa and I would say, is that that decision has to be made by the Delaware Supreme Court. And that's why I'm asking your honor to limit it. Hold on for a second. They made their decision in Evans 3. They made their decision saying that Evans 2 was correct. And they did in Evans 3. You're asking us under the law of habeas to say that their decision was unreasonable. And I don't know what we base that on. We base it on the fact that. Tell me what you would base it on. What Supreme Court decision would you base it on? Pepper. The Pepper decision is almost on point. I mean, we do credit. You base it on Pepper. We do credit the gentleman in Pepper for positive institutional work, positive things that reflected in a lower sentence, but also gave a message to other inmates throughout the country. There is hope. You don't have to do a PCR or a rare habeas corpus. You can file a motion for reconsideration based on Pepper. I noticed in your briefs you seem to rely on Helton, our case in Helton, in support of a due process argument. But, of course, that's not a Supreme Court case. No, Judge, it's not. It's in there. It's a 30-year-old case, Your Honor, to create and manufacture. The arguments that I have done today was not in task. That was simple. However, I think it's meaningful. The length of the brief and the length of the file I don't think is the important thing. It's the length or the gist of the argument. And here's a man that I have to call back tonight and say, I don't know what's going to happen. I know you've done, quote, unquote, the maximum you could have done now that you're in state court, and I'm in federal court arguing your case. And the federal courts were interested enough to hear your case, sir. But I don't know what life in Delaware is. I don't know if it's life. I don't know if it's 45 years. I know what it is if this crime happened in New Jersey, but I can't tell you what it is in Delaware, and we won't know perhaps for a little while. I'm asking the courts to have a limited remand back to Delaware. That's the relief I'm seeking, Your Honor, a limited remand back to Delaware for the Delaware courts to determine what is life in Delaware. Is it life? Is it 45 years? Because if it's life, it's in essence a death penalty to my client. Thank you very much. All right. We'll hear from you. Did you reserve time on remand? No, Your Honor. All right. I mean on rebuttal. Excuse me. Yes, Mr. Smith. May it please the Court, good afternoon. Deputy Attorney General Gregory Smith on behalf of Warden Phelps and Attorney General Biden. Ward Evans never had an expectation of good time credits on his life sentence for rape in the first degree. When Kent County Superior Court judge sentenced him to life in 1982, at that time when the Department of Correction calculated his sentence, he did not have good time. He did have a parole eligibility date. I just want to, I guess, clear that up with the Court. Mr. Evans has been eligible for parole in the past. That's not a question. His sentence was life with the possibility of parole. What does that mean in Delaware? That's where the 45 years comes into play, Your Honor. Because obviously on a life sentence, that being an indefinite term, in order to calculate a parole eligibility date, the statute provides that for parole purposes, life means 45 years. And that's a calculation. It's a reason, for a reason of calculation, correct? It's by statute 45 years, and then that 45 years is also, the parole eligibility date is also reducible by good time. And that was statutory good time. And that's how the. So what it means is at the end of one-third of 45 years or 15 years, there is an eligibility for parole, and a parole board could, if they wanted to, consider a parole application if one were made. That's almost entirely correct, Your Honor. If I may just qualify that, it was actually even shorter than 15 years because that 15 years was reduced by good time. Okay. And I guess it's certainly a word the Delaware Supreme Court used, so I shouldn't get myself in too much trouble for saying this. The confusion was between good time applied on a parole eligibility date and good time applied on a statutory maximum date. Was there any application for parole ever made? Yes, Your Honor. Mr. Evans. There was never any parole hearing. It has not been granted. I know it's not been granted. Was there ever any parole hearing? Was there a parole hearing at which it was denied? Yes. There was? Yes. Okay. I can't say the specific date off the top of my head. Your position, that section, what is it, 43-46, is his only option to get out of jail? That's correct, Your Honor. And so he does have the possibility of getting out. That's not the representation by counsel that this is in effect. He can never get out. That's simply not true. So I just want to make sure the court is aware. Is there something wrong with not having a – your adversary seems to think that there's something wrong with not having life be determined in terms of a number of years. Is there anything wrong with that? Absolutely not, Your Honor. I mean, Delaware sentences, the 45 years came into for parole calculations, and to further, I guess, go backwards in time for the court's benefit, Delaware got rid of parole in – it was the Truth in Sentencing Act of 1989. It became effective in June of 1990. There was a little window in that six-month period where inmates could opt either into or out of what I – I'm sorry, Truth in Sentencing, and I'm used to saying TIS, so I apologize if I slip into Delaware acronyms. That, whether we call it 1989 or 1990, is not relevant for this case. Ever since that time, parole was abolished for crimes after the effective date of the Truth in Sentencing Act. So the inmates in Delaware who are affected by this scenario were the inmates sentenced to life with the possibility of parole pre-TIS. So it's a fairly discrete group at this time, but certainly, no, either pre-TIS or post-TIS, a life sentence in Delaware meant life. It was not converted otherwise into a term of years. What do you think of Mr. Paul's argument that there should be a remand to evaluate Pepper? First, Your Honor, I have to say— Or evaluate the impact of Pepper. I do not know what Pepper is. I apologize for saying that, Your Honor. I did not see that in the briefing, and I'm sure I can comment intelligently on that case. I'm hoping that it is a federal sentencing guideline case involving a— It's a good process. —by the U.S. Attorney's Office. But that has no application to habeas, and obviously, this court cannot remand. That's not an option available to Your Honors. You're reviewing the decision of the district court, De Novo, but that decision is looking at what took place in the Delaware state courts. And obviously, the appellee's principal position is that, really, we're not even talking about a constitutional claim that's cognizable under 2254A. We're talking about a state law claim, that being, how does the state of Delaware interpret its own sentencing statutes? And here, while the events of 2004 and 2005 in Mr. Evans' case certainly complicated things, at the end of the day, that was a decision of the Delaware Supreme Court interpreting Delaware statutes. If the court has additional questions, I'm certainly prepared to answer them. All right. Thank you very much. Mr. Paul, I don't think you reserved for rebuttal, or did you? I deferred to the court, and I was going to ask the court if I have five minutes of court time. I think if you haven't reserved, unless we have questions. Are there questions? I'll give you one minute. Thank you, Judge. I just agree with the court, then, in respect to what do we do now? What do we tell this person? What is life interpreted in respect to Delaware? Well, he has the opportunity for parole if he can. He's eligible for parole if he can convince the parole authorities to let him out. Isn't that correct? If he's seen before the parole board and the parole board gives him the credit that the Pepper Court, I believe, applies in this case, then yes. Pepper wasn't a habeas case, was it? This case? Pepper. Pepper was not a habeas case. By the way, Pepper is not in your brief. Pepper came out just shortly before I was assigned this brief. I apologize. I did not cite Pepper. Okay. You do know you could send a 28-J letter. You know that. Yes. You haven't sent one of those, have you, on Pepper? Not on Pepper, Judge. Do you want to? Sure. I know what Pepper is, but I hadn't thought of Pepper as it related so much to your case because you didn't raise it. I'd like to judge, yes. I think we can look at it. I can have it in by the end of the week. Because it is not habeas, I have to think it's of limited value because even, you know, you put the layer of habeas on, there then has to be an unreasonable application by the Delaware court. So I think it's a little different. But we will, we can look at it. And I guess if counsel wants to submit something about Pepper, you know, get it in within a week, and counsel for the warden can respond within a week after that. All right? I mean, it has formed part of his argument, so if it does impact the case, we can't ignore it. I'm just thinking I'm doubtful that it does. Does that work? Thank you. All right. All right, thank you very much. We will take the case under advisement. Do you want to take a break? It's up to you. Keep going? Sure. This is going to be it. We'll call our.